VINES, et al. *v.* SOUTHWESTERN MISSISSIPPI ELECTRIC POWER ASSN.

No. 41798 May 1, 1961 129 So. 2d 396

*H. Alva Brumfield,* Baton Rouge, La.; *R. L. Netter-ville,* Natchez, for appellants.

*Laub, Adams, Forman & Truly,* Natchez; *Daniel, Coker & Horton,* Jackson, for appellee.

GILLESPIE, J.

This suit was brought under the wrongful death statute by the surviving heirs of Richard Vines, deceased, wherein the plaintiffs below, appellants here, sought damages for the alleged wrongful death of the said Richard Vines, deceased. The lower court directed a verdict for defendant below, appellee here, and appellants appeal to this Court.

We state the facts in the light most favorable to appellants against whom the directed verdict was entered by the lower court.

The Stanton-Church Hill road, a state highway, runs in a southerly direction in Jefferson County. At the place where the accident here involved occurred, the road curves gradually to the left traveling south. The appellee, an electric power cooperative engaged in the dis-

tribution of electric power to consumers, maintained a power line on the westerly side of said road. The said power line had been constructed nine years before the accident and was being maintained in accordance with standards of construction and maintenance applicable to the industry. The wires maintained by appellee on said power line were uninsulated and because of the curve in the said road, the wires extended, to some extent, over the road between the poles. The road is graveled and the traveled portion thereof is 29 feet in width on the average.

On the night of April 10, 1959, at about 11:00 P. M., the deceased, Richard Vines, was a guest passenger in an automobile operated by John Parsons. There were four young men in the automobile in all, and they all admitted drinking two bottles of beer each some time earlier, but the proof was to the effect that they were sober. The automobile was traveling about 35 or 40 miles an hour on said road in the slight curve to the left when it left the traveled portion. of the road and ran for 150 feet in the ditch and collided with a power line pole maintained by appellee. The pole was three and one-half to four feet from the traveled portion of the road sloping to the ditch. The impact of the collision broke the power line pole and caused the power line to fall into the road. The driver got out of the automobile first, followed by the deceased who ran from the car, went up the embankment and into the power lines. The deceased was killed almost instantly from electrocution. John Parsons, the driver of the automobile, knew the road and had traveled it many times. There was no other traffic on the highway. Parsons did not apply his brakes after he left the traveled portion of the highway, and he testified further that he never saw the power line pole before he struck it. An expert testified that there was a failure of the power steering on the automobile. Appellants introduced numerous enlarged photo-

graphs which clearly show the road, the stump of the broken pole, and where it was located in relation to the ditch and the traveled portion of the road.

The main question is whether appellee was negligent in maintaining its power line pole.

Section 2778 of the Mississippi Code of 1942, as amended and recompiled, provides as follows:

"All companies or associations of persons incorporated or organized for such purposes are authorized and empowered to erect, place, and maintain their posts, wires and conductors along and across any of the public highways, streets, or waters and along and across all turnpikes, railroads and canals, and also through any of the public lands; but the same shall be so constructed and placed as not to be dangerous to persons or property; nor interefere with the *common use* of such roads, streets, or waters; nor with the use of the wires of other wire-using companies; or more than is necessary with the convenience of any landowner." (Emphasis added.)

Section 2780, Mississippi Code of 1942, as amended and recompiled, provides in part as follows:

"All companies, associations of persons, municipalities, associations of municipalities, or natural gas districts, incorporated or organized * * * for the purpose of constructing, maintaining and operating lines for transmitting electricity for lighting, heating and power purposes, are hereby empowered to exercise the right of eminent domain in the manner now provided by law, and to build and construct the said pipe lines and appliances along or across highways, waters, railroads, canals, and public lands, above or below grounds, but not in a manner to be dangerous to persons or property, nor to interfere with the *common* use of such roads, waters, railroads, canals and public lands * * *." (Emphasis added.)

Section 5474, Mississippi Code of 1942, as amended and recompiled, being a part of the Electric Power As-

sociation Act, provides, in part, as follows, concerning the powers of an electric power association such as the appellee company is:

"A corporation created under the provisions of this Act shall have power to do any and all acts or things necessary or convenient for carrying out the purposes for which it was formed, including, but not limited to:
* * *

"(6) To use any right-of-way, easement or other similar property right necessary or convenient in connection with the acquisition, improvement, operation or maintenance of a system, granted by the state or any political subdivision thereof, provided that the governing body of such political subdivision shall consent to such use * * *."

Section 8038, Mississippi Code of 1942, as amended and recompiled, relating to certain powers of the State Highway Department, provides in part as follows: "The State Highway Commission as herein provided shall be vested with the following powers, to-wit:

"(f) To make proper and reasonable rules, regulations and ordinances for the placing, erection, removal or relocation of telephone, telegraph or other poles; * * * and other obstructions that may, in the opinion of the Mississippi Highway Commission contribute to the hazard upon any of the state highways, or in any way interfere with the ordinary travel, upon such highways, or the construction or reconstruction or maintenance thereof, and to make reasonable rules and regulations for the proper control thereof * * *.
* * *

"(n) To establish and enforce set-back regulations."

In Gulfport & Mississippi Coast Traction Co. v. Manuel, 123 Miss. 266, 85 So. 308, a street car company erected and maintained a guy wire pole to support a trolley wire. The pole was situated three and one-half feet outside the traveled portion of the street but some four-

teen feet from the property line on the south side of
the street. Manuel, appellees' decedent, lost control of
his motorcycle and ran into the pole, causing his death.
The jury found for appellees. In reversing and render-
ing judgment for appellants this Court held that there
was no negligence in maintaining the pole in question.
The Court recognized the right of the city to set apart
a portion of the street right-of-way for the erection of
light, telephone and other utility poles and that a travel-
er on the street is not entitled to have the use of the
entire street right-of-way for travel. The opinion recog-
nized the public interest served in the use of the streets
for the erection of utility poles. The legislature has
recognized this public interest in connection with the use
of highways in rural areas by enactment of the statutes
cited above.

 ■■ ■ In the later case of Mississippi Power Co. v.
Sellers, 160 Miss. 512, 133 So. 594, the pole in question
was located about three feet from the edge of the right-
of-way and within eight feet of the traveled portion of
the highway. The injured party was a passenger in a
truck driven by one Parker, who carelessly lost control
of the truck, causing the trailer attached thereto to
strike the pole in question, overturning the truck and
injuring Sellers. The jury found for plaintiff and on
appeal the Court reversed and entered judgment for ap-
pellant, relying on the Manuel case. The Court recog-
nized the public interest in the erection and maintenance
of utility poles on highway rights-of-way in rural areas.
The Court stated that it is not required that roads be
in such condition as to insure the safety of reckless
travelers. We think the two cited cases are directly in
point and control the case at bar. It is true that in the
cited cases the injury was due to the impact of the
vehicles with the poles, while in the case at bar the
death resulted from the deceased coming in contact with
live wires caused to fall by the breaking of the pole. It

would seem to us that it would be spurious reasoning to say that the utility is not liable for death or injury resulting from collision with the pole, and to hold the utility liable for death or injury by electrical shock when the collision breaks the pole and allows the live wires to fall. To do so would permit the anomaly of allowing one passenger in such collision to recover because he survived the impact and left the automobile and died upon contacting the live wires, while recovery would be denied where another is killed outright in the collision with the pole. The Manuel and Sellers cases were followed in Hemphill v. Mississippi Power Co., 84 F. 2d 971 (CCA 5th, Miss.); Fiechter v. City of Corbin, 245 Ky. 178, 71 S. W. 2d 423; Clayborn v. Tennessee Electric Power Co. (Tenn.), 101 S. W. 2d 492; Jafek v. Public Service Co., (Okla.), 79 P. 2d 813; Clinkenbeard v. City of St. Joseph, et al., (Mo.), 10 S. W. 2d 54, and in numerous other cases.

In the case at bar the pole was not within that portion of the right-of-way designed for public travel and no one making the ordinary use of the road and exercising reasonable care and caution would travel where the pole was located. The photograph clearly shows it to be located on the slope of a ditch or ravine. It is true that it could have been moved about six feet further from the traveled portion of the road and still be located on the right-of-way, and in fact, it was moved this distance after the accident in question. The exact situation was true in the Manuel case.

In Clayborn v. Tennessee Electric Power Co., supra, the Tennessee court, after citing the Manuel case, stated that "The general rule established by the modern authorities is that a public utility company lawfully maintaining a pole in or near a public highway is not liable for the damage to a person or property resulting from a vehicle striking such pole, unless it is erected on the traveled portion of the highway or in such close

proximity thereto as to constitute an obstruction dangerous to anyone properly using the highway, and the location of the pole is the proximate cause of the collision.'' ██ ██ Viewing the facts in the case at bar in the light most favorable to appellants, we are of the opinion that the sole proximate cause of the death of Richard Vines was the negligence of the driver of the automobile and the defect in the automobile. Even if the defect in the automobile made it difficult or impossible for the driver to steer the car, there was no reason whatever for him to continue traveling a distance of 150 feet outside the traveled portion of the road without ever applying his brakes. This was not a proper use of the highway.

Appellants contend that under the case of United Gas Pipe Line Co. v. Jones, 236 Miss. 471, 111 So. 2d 240, the appellants made a jury case. The opinion in that case distinguished the Manuel and Sellers cases. We do not think the Jones case is applicable.

Appellants cite a number of our cases holding that appellee is charged with the highest degree of care in the maintenance of its electric power lines. There is nothing in this case indicating that the public, in making proper use of the road, would probably come into contact with the power wires. Of course, when they are knocked down, they become dangerous, but danger is not synonomous with negligence; and where the danger results solely from the careless act of another in causing the power lines to be knocked down, as was the case here, we do not think the degree of care required makes it a jury case.

Appellants contend that an expert witness showed that the power lines were not built and maintained according to the requirements of a book published by the National Bureau of Standards entitled ''Installation and Maintenance of Electric Supply and Communication Lines Safety Rules and Discussion''. In our view of the expert's testimony, it is not shown thereby that there

was a violation of these rules. The testimony of this witness that the lines were dangerous does not make this a jury case. Whether the particular facts made it a jury case is a question of law which cannot be varied by an expert witness in a case of this kind.

It is also contended that the power lines should have been constructed so that when the pole was knocked down, the wires would not have fallen into the road. The expert witness testified that the adding of another pole could have eliminated this hazard. We do not think the utility must guard against dangers resulting from vehicles leaving the traveled portion of the highway and knocking down the power poles, as already stated. Moreover, if the lines are knocked down, they must fall some place. If they had fallen on the automobile, the danger may have been greater. The fact that they fell in the highway was not the proximate cause of the death of Vines. The sole proximate cause was the manner in which the automobile was driven.

Appellants showed that prior to the accident in question, a motorist had lost control of his automobile and struck the same pole. They also offered to prove another person had struck the pole some time before. We are of the opinion that the fact of prior accident does not change what has been said. The fact remains that anyone striking the pole was not lawfully and properly using the road. The evidence and the photographs clearly show that anyone making the ordinary and proper use of the highway would not strike this pole.

The other contentions of appellants regarding procedural matters are not, in our opinion, well taken.

Affirmed.

*McGehee, C. J.,* and *Arrington, Ethridge, McElroy* and *Jones, JJ.,* concur.

Kyle, J., Dissenting:

I cannot concur in the majority opinion rendered in this case.

Whether the power association was negligent in stringing its wires along the highway in such manner as to overhang for a considerable distance the traveled portion of the highway, and thereby endanger the use of the highway by the traveling public; and whether the power association was negligent in erecting its pole on the edge of the shoulder of the highway, and within 3½ or 4 feet from the traveled portion of the highway in a manner to be dangerous to persons using the highway, or to interfere with the common use of the road; and whether such negligence, if any, was a proximate contributing cause of the plaintiff's injuries, were questions for the jury to decide; and the case, in my opinion, should have been submitted to the jury under proper instructions of the court.

Section 2778, Mississippi Code of 1942, Recompiled, provides that electric power associations ''are authorized and empowered to erect, place and maintain their posts, wires and conductors along and across any of the public highways * * *, and also through any of the public lands; but the same shall be so constructed and placed as not to be dangerous to persons or property; nor interfere with the common use of such roads * * *.'' Section 2780, Mississippi Code of 1942, Recompiled, authorizes all such companies to exercise the right of eminent domain and ''to build and construct the said pipe lines and appliances along or across highways * * *, but not in a manner to be dangerous to persons or property, nor to interfere with the common use of such roads.''

Any unauthorized obstruction which unnecessarily impedes or incommodes the lawful use of a highway is a public nuisance at common law. Elliott, Roads & Streets, 2d Ed. Sec. 644. ''Even though the entire width of a

highway is not prepared for travel, or although a bridge or culvert does not extend to its entire width, the public rights of passage are not thereby limited in favor of one who places an unauthorized or improper structure within the highway limits, nor is the latter relieved from liability for injuries resulting therefrom by reason of the fact that such obstruction is outside the traveled way.'' 25 Am. Jur., 809, Highways, par. 527.

The appellees' attorneys rely upon the cases of Gulfport and Mississippi Traction Company, et al. v. Manuel, et al. (1920), 123 Miss. 266, 85 So. 308, and Mississippi Power Company v. Sellers (1931), 160 Miss. 512, 133 So. 594. But the facts in each of those cases were entirely different from the facts shown by the record in this case. The Manuel case was decided prior to the enactment of Chapter 291, Laws of 1922, which appears in its amended form as Section 2780, Code of 1942, Recompiled. In the Manuel case the guy wire post with which the decedent collided was used to support the trolley wire which furnished electric power to propel the movement of trolley cars along a street in the City of Biloxi. In the Sellers case the pole with which the appellee collided was located eight feet from the traveled portion of the road, and ''about as far from the traveled way as possible and at the same time be wholly upon the public land.''

The shoulders of a highway in my opinion are for the use of traffic in cases of emergencies, or when circumstances indicate their usefulness, and they should be kept free of unnecessary obstructions which are likely to cause injury to persons using the highway.

Justices *Lee* and *Rodgers* join in this dissent.