161 So.2d 811

**Cecil GLASS**

v.

**Claudia DAVISON et al.**

**6 Div. 987, 987–A.**

Supreme Court of Alabama.

March 12, 1964.

Huie, Fernambucq & Stewart, Birmingham, for appellant.

E. Ray Large, Birmingham, for appellees.

MERRILL, Justice.

Plaintiff Claudia Davison, a minor suing pro ami for personal injuries arising from an automobile collision, recovered a judgment against defendant Glass in the amount of $2,000. Her father's suit for loss of services and medical expenses of his daughter resulted in a judgment for $4,000. The two suits were consolidated for the purpose of trial and separate verdicts were rendered.

The cases were submitted to the jury on two similar counts, 1A charging negligent operation of an automobile, and 3A charging

that Glass had bought for or furnished to the twenty year old driver of the automobile, Floyd Kendrick, a quantity of alcoholic beverages which caused him to become intoxicated and, as a proximate result of his intoxication, he negligently drove an automobile into the motor vehicle in which Claudia Davison was riding and injured her.

On this appeal, appellant Glass limits his argument to his contentions that the court erred in refusing to give the general affirmative charge for the defendant as to the negligence count, 1A. Appellant contends that there was no evidence that the driver Kendrick was a servant, agent or employee of Glass acting within the scope of his employment at the time the accident occurred.

We state the tendencies of the evidence most favorable to plaintiffs although there was decided conflict in the testimony adduced.

Floyd Kendrick was employed by Glass to help make and hang aluminum screens. He lived in the residence of Glass and part of his wages was the furnishing of his room and board by Glass. On the day of the accident, Kendrick had borrowed his brother's automobile for use in calling on a young lady that night.

Glass and Kendrick quit work about 4:30 P.M., cleaned up, drank some beer, and since Mrs. Glass was not at home, they decided to go to the Golden Rule Barbecue and they were accompanied by Glass' son and the son's wife. They all rode in the automobile Kendrick had borrowed from his brother. Kendrick had two beers and a sandwich at the Golden Rule Barbecue which Glass paid for. They left and arrived back at the Glass home about 8:00 P.M. and let Glass, his son and daughter-in-law out of the car. After talking a few minutes with his passengers, he left for his date.

The Glass home in Irondale faces Montevallo Road, which runs east and west and

dead ends into 16th Street, which runs north and south. The Glass home is about 135 feet west of the intersection of Montevallo Road and 16th Street. The most direct route for Kendrick to have taken from the Golden Rule Barbecue to the home of his date would have been to continue north on 16th Street, but as he had Glass and the son and daughter-in-law in the car, he turned left on Montevallo Road and took them to the Glass residence. After he let them out, he came back east on Montevallo Road, stopped at the 16th Street stop sign, and then started turning left into 16th Street to go north toward the home of his date. As he neared the east curb on 16th Street, his tire blew out, he lost control of the car, it hit the curb and then veered to the left and crashed into the front of the Davison car, which was headed south on 16th Street. Kendrick's head went through the windshield. He was taken to a hospital and his bill was paid by appellant.

The question presented is whether the relationship of master and servant existed between Glass and Kendrick when the accident happened. Appellant insists that as a matter of law it did not. Appellees contend that it was a question for the jury and if the jury so found the doctrine of respondeat superior applies.

There is no room for the application of the administrative presumption because the automobile was owned by Kendrick's brother.

■ Negligence is sometimes imputed to the master when the person charged is (1) an occupant of the car; or (2) is the owner or bailee of the car; or (3) has the right to control its operation by the driver; or (4) the car must at the time be operated for his benefit or the mutual benefit of them both. The right to control the operation of the car by the one sought to be charged is essential. Downes v. Norrell, 261 Ala. 430, 74 So.2d 593; Woodson v. Hare, 244 Ala. 301, 13 So.2d 172.

Here, the car was being used for the benefit of both the master and the servant in securing the evening meal.

■ It makes no difference upon the question of the employer's ultimate liability that the vehicle may belong to the servant, provided only that the servant was driving it at the time with actual or implied consent of his employer and in the discharge of the duties owed by the servant to him. 5 Blashfield, Cyclopedia of Automobile Law, Sec. 3078, p. 438; Smith v. Brown-Service Ins. Co., 250 Ala. 613, 35 So.2d 490; Luquire Ins. Co. v. McCalla, 244 Ala. 479, 13 So.2d 865.

It is conceded that appellant might have been liable had the accident happened between the time the car left the Glass home for the Golden Rule Barbecue and returned, because that trip was made in the furtherance of the master's duty to furnish the night meal to his employee. This rule is recognized in Hill v. Decatur Ice & Coal Co., 219 Ala. 380, 122 So. 338. But appellant insists that the master's business was completed when they returned to his home, and that Kendrick was on a strictly personal mission to pick up his date when the accident occurred.

We have not been cited to any case with a similar factual situation. We could agree with appellant if Kendrick had properly reached the east lane of traffic going north on 16th Street and resumed his journey on that street to his date's home. If he had not had Glass and his family with him, there would have been no necessity to turn left off 16th Street and go to the Glass home. But to complete the trip for Glass, it was necessary to deposit the three passengers at the master's home.

■ We do not think that it can be said, as a matter of law, that the master's liability ended when Glass and his family alighted from the car. The master was responsible for the deviation of the servant from his personal mission, and we think it was a jury question as to whether the servant was still acting within the scope of his employment until he was once again normally in the lane of traffic which he had left to deliver the master and his guests to the master's house.

We reach this conclusion by using as analogy the settled law of this state applicable to deviations by a servant from his master's business. We have said that where the servant abandons his master's business for personal reasons, the employment is suspended, and the master is not liable for the negligence of the servant during the suspended employment and during the time of the servant's departure from the master's business. Each case must be governed by its own peculiar facts. Bell v. Martin, 241 Ala. 182, 1 So.2d 906; Engel v. Davis, 256 Ala. 661, 57 So.2d 76.

The following statement has been quoted, approved and followed in our cases:

"In cases where the deviation is slight and not unusual, the court may, and often will, as matter of law, determine that the servant was still executing his master's business. So, too, where the deviation is very marked and unusual, the court in like manner may determine that the servant was not on the master's business at all, but on his own. Cases falling between these extremes will be regarded as involving merely a question of fact, to be left to the jury or other trier of such questions."

Edwards v. Earnest, 206 Ala. 1, 89 So. 729, 22 A.L.R. 1387; Bell v. Martin, 241 Ala. 182, 1 So.2d 906; Scott v. Birmingham Electric Co., 250 Ala. 61, 33 So.2d 344; Engel v. Davis, 256 Ala. 661, 57 So.2d 76.

Three examples of the application of the rule that the facts presented a question for the jury are Edwards v. Earnest, supra, where the servant, sent three blocks after the employer's goods, picked up the goods and then went about seven blocks on a personal errand, and had returned about half way

when the accident occurred; Rooks v. Swift & Co., 210 Ala. 364, 98 So. 16, where the employee, directed to take the car to the garage, gave his fellow worker a ride home, but was returning to the garage when the accident happened; and Fuqua v. Lumbermen's Supply Co., 229 Mo.App. 210, 76 S.W.2d 715, where the master's driver, proceeding on a delivery, stopped by a co-worker's house to drop him off, turning off the route sufficiently to let him off at the back instead of the front of the house, and was then backing the truck, preparatory to resuming the deliveries, when the accident happened.

■■ In civil cases, the question must go to the jury if the evidence arising therefrom furnishes a scintilla in support of the theory; and in considering the propriety of the affirmative charge, we review the tendencies of the evidence most favorable to the plaintiff, regardless of any view we may have as to the weight of the evidence; and we must allow such reasonable inferences as the jury were free to draw, not inferences which we may think the more probable. Southern Apartments, Inc. v. Emmett, 269 Ala. 584, 114 So.2d 453, and cases there cited.

We cannot say that the jury could not draw a reasonable inference from the testimony that Kendrick's travel from the Glass home back out to 16th Street and into the regular path or flow of the traffic going north on that street was still such travel that was combined with his master's business and that he was still within the scope of his employment.

The trial court correctly refused to give the requested affirmative charge as to Count 1A, and the motion for the new trial based upon the same grounds was properly overruled.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and HARWOOD, JJ., concur.