206 So.2d 594

ALABAMA POWER COMPANY

v.

Joseph GUY, pro ami.

ALABAMA POWER COMPANY

v.

Criss GUY.

1 Div. 121, 122.

Supreme Court of Alabama.

Nov. 9, 1967.

Rehearing Denied Feb. 8, 1968.

Inge, Twitty & Duffy, Mobile, and Martin, Balch, Bingham & Hawthorne, Birmingham, for appellant.

Cunningham & Bounds, Mobile, for appellees.

continued moving north on Washington Avenue until it came in contact with an electric power pole of the Alabama Power Company situated on the west side of Washington Avenue at a point approximately fifty feet north of the point of the collision of the two vehicles.

Immediately after the Petrantis automobile ran into the power pole, an uninsulated energized electric wire carrying 2400 volts of electricity snapped and fell to the ground at a point on Washington Avenue approximately 150 feet south of the power pole which was struck by the Petrantis automobile. A minute or so later a six-year-old Negro boy, Joseph Guy, while running toward his home from a point near the scene of the collision of the two vehicles, came into contact with the fallen electric wire and received serious electrical burns.

Joseph Guy, by his next friend and father, Criss Guy, brought suit in the Circuit Court of Mobile County against Johnny Gulley, Mrs. Petrantis and the Alabama Power Company to recover damages for personal injuries sustained as a result of coming into contact with the fallen wire.

Criss Guy brought suit against the same defendants, claiming damages for expenses incurred in the treatment of his son's injuries and for loss of his services.

By agreement the two cases were consolidated and tried together.

There were separate verdicts. The verdict in the Joseph Guy case was in favor of the plaintiff and against the defendants Johnny Gulley and Alabama Power Company in the sum of $30,000. The verdict in the Criss Guy case was in favor of the plaintiff and against the same two defendants in the sum of $5,000. Judgments followed the verdicts.

The Alabama Power Company filed a motion for new trial in each case. Johnny Gulley did not file a motion for new trial. The motions for new trial filed by the Alabama Power Company were overruled.

## PER CURIAM.

On the afternoon of October 8, 1960, automobiles driven by Mrs. Gladys Petrantis and Johnny Gulley were involved in a collision in the intersection of Washington Avenue and Selma Street in the City of Mobile. The Petrantis automobile was being driven in a northerly direction on Washington Avenue and the Gulley automobile was being driven in a westerly direction on Selma Street. After the collision the Gulley automobile came to rest in the intersection, but the Petrantis automobile

It has perfected an appeal to this court in each case. Johnny Gulley has not appealed and has not seen fit to unite in the appeals of the Alabama Power Company, although summons was duly issued to him in accordance with the provisions of § 804, Title 7, Code 1940.

The two appeals were submitted here on one record by agreement.

The appellant, Alabama Power Company, has made separate assignments of error in the two cases on appeal, but we need treat only the argued assignments of error in the Joseph Guy case because what is said of those assignments of error applies equally to the argued assignments of error in the Criss Guy case.

There were three counts in the amended complaint and the appellant, Alabama Power Company, first argues its assignment of error No. 2 to the effect that the trial court erred in overruling its demurrer to Count One, as last amended, to which we will refer hereafter simply as Count One, which reads in pertinent part as follows:

"Plaintiff claims of the Defendants the sum of TWO HUNDRED THOUSAND AND NO/100 ($200,000.00) DOLLARS, as damages for that heretofore and on, to-wit, October 8, 1960, the Defendant, Johnny Gulley was operating an automobile in a Westwardly direction on Selma Street and the Defendant, Gladys W. Petrantis was operating an automobile in a Northerly direction on Washington Avenue, both of said streets being public streets in the City and County of Mobile, Alabama and on said date at the interesection of said Selma Street and Washington Avenue both of said Defendants so negligently operated their respective motor vehicles as to cause them to collide with each other and the vehicle then and there operated by the Defendant, Gladys W. Petrantis to collide with a power pole located at a point, to-wit, 100 feet North of the Northwest corner of said intersection of

said Selma Street and Washington Avenue thereby causing the wires or cables then and there supported by said power pole to break and fall to the ground on and along a public sidewalk in front of, to-wit, 504 Washington Avenue; and Plaintiff, Joseph Guy, who was then and there on said public sidewalk at said place, came in contact with said wires or cables, thereby proximately inflicting on the Plaintiff the following personal injuries; (description of injuries).

"Plaintiff avers that said power pole and the wires or cables it supported, were installed, owned and maintained by the Defendant, Alabama Power Company, and that said wires or cables were then and there charged with dangerous quantities of electricity.

"Plaintiff avers that all of the damages and injuries he suffered were caused as a direct and proximate consequence of the negligence of the Defendants, Johnny Gulley and Gladys W. Petrantis in the negligent operation of their said motor vehicles at said time and place and in the combined and concurring negligence of the Defendant, Alabama Power Company, in the negligent maintenance of its said pole and the said wires or cables it supported in close and dangerous proximity to said public street and in a condition which was known to it or in the exercise of reasonable care should have been known to it to be weak and unsafe, thereby permitting said wires or cables to fall to the ground at said time and place as aforesaid, hence this suit."

Appellant takes the position with regard to this count that it affirmatively shows lack of proximate cause between the alleged negligence of the appellant and the injuries to the appellee. More particularly, appellant contends that pertinent grounds of demurrer point out that it affirmatively appears from Count One that the negligence of defendants Gulley and Petrantis caused the collision of the Petrantis automobile with appellant's pole, and the allegations

show that if any negligence could be charged against appellant, "such negligence was at most the remote cause of plaintiff's injuries, and one that would not have produced such injuries had it not been for the automobile collision, an independent intervening act, for which appellant is not legally responsible." Appellant also contends that Count One "is defective in that it does not allege that appellant was in any way negligent in not discovering that the wire had been broken and was not negligent in leaving the wire in a dangerous position on the ground for an unreasonable length of time."

The most important and difficult question is that relating to proximate cause.

Appellant cites Morgan v. City of Tuscaloosa, 268 Ala. 493, 108 So.2d 342, where we affirmed a judgment sustaining demurrers to a complaint charging that defendant's sewers were maintained negligently, causing a large puddle of water to form in the streets; that a third party drove his automobile through the water, which splashed on his windshield so that he could not see, and the automobile struck the plaintiff. In that case we said:

"It is true that the law will consider only the proximate cause and not a remote cause where there are two or more causes of injury. (Citing cases.)

"It is also true that where a prior cause merely created the condition or gives rise to the occasion and after the condition has been created an intervening agency produced the injury, the first is not the proximate cause. (Citing cases.)

\* \* \* \* \* \*

"Our cases also hold that where each count of the complaint shows on its face that some independent agency has intervened and has been the immediate cause of the injury, even though a party is guilty of negligence in the first instance, that party is not responsible and it is the duty of the trial court to sustain a demurrer to the complaint where the complaint and each count thereof shows on its face that an independent agency has intervened and has been the immediate cause of the injury. (Citing cases.)" (268 Ala. 495–496, 108 So.2d 344–345.)

Appellant contends that the intervening independent act of a third person, not to be anticipated by appellant, created the condition of danger, and must be held to be the proximate cause of the injury, and that the complaint on its face shows no concurring negligence on the part of appellant.

Appellee contends that the maintenance of high voltage wires in a weak and unsafe manner by appellant was the creation and maintenance of a dangerous condition and that appellant could reasonably anticipate that wires or cables in such condition might be broken and fall to the ground from any cause and cause injury to a third party. Appellee cites Sullivan v. Alabama Power Co., 246 Ala. 262, 20 So.2d 224, where this statement appears:

"The particular principle of proximate cause here pertinent to defendant's liability is: That a person guilty of negligence should be held responsible for all the consequences which a prudent and experienced man, fully acquainted with all the circumstances which in fact existed, whether they could have been ascertained by reasonable diligence or not, would at the time of the negligent act, have thought reasonably possible to follow, if they had occurred to his mind. \* \* \*

"It is not necessary that the defendant should anticipate the injury in the precise form as resulted. Nor need the particular consequences have been within the contemplation of the parties. \* \* \*

"In line with our decisions on this subject is the statement: 'As regards proximate cause \* \* \* the courts look more for the possibility of a hazard of some form to some person than for the expectation of the particular chance

that happened. Accordingly, it is not necessary to a defendant's liability, after his negligence has been established, to show, in addition thereto, that the particular consequences of his negligence could have been foreseen by him; it is sufficient that the injuries are the natural, although not the necessary and inevitable, result of the negligent fault— such injuries as are likely, in ordinary circumstances, to ensue from the act or omission in question.' 38 Am.Jur., § 62, p. 714.

"Our recent case of Housing Authority of Birmingham Dist. v. Morris, 244 Ala. 557, 566, 14 So.2d 527, otherwise states the applicable rule as follows: If common experience has demonstrated that dangers lurk in the method adopted or in the instrumentality maintained by a person he rests under the obligation of ascertaining the peril and taking precautions to avoid injury therefrom." (246 Ala. 267–268, 20 So.2d 228.)

In Alabama Power Co. v. Irwin, 260 Ala. 673, 72 So.2d 300, a man was electrocuted when a metal pipe thirty feet long which he and a fellow worker were removing from a well came in contact with an uninsulated electric wire maintained by the defendant. There, too, defendant urged that its negligence, if any, was not the proximate cause of decedent's death. This court said:

" * * * One guilty of negligence is held responsible for all the consequences which a prudent and experienced man, fully acquainted with all the circumstances which in fact existed, whether they could have been ascertained by reasonable diligence or not, would at the time of the negligent act have thought reasonably possible to follow, if they had occurred to his mind. Armstrong v. Montgomery Street Ry. Co., 123 Ala. 233, 26 So. 349; Briggs v. Birmingham Ry., Light & Power Co., 188 Ala. 262, 66 So. 95; Sullivan v. Alabama Power Co., 246 Ala. 262, 20 So.2d 224. * * *" (260 Ala. 678, 72 So.2d 304)

In Alabama Power Co. v. Smith, 273 Ala. 509, 142 So.2d 228, where a man, standing on the roof of a building being constructed, was electrocuted when the cable of a crane lifting cement to the roof came in contact with the defendant's uninsulated electric wires hanging over the roof, the same argument was made as here that the demurrer should have been sustained. We said:

"When Count E(1) in the instant case is compared with Count 1 in Sullivan v. Alabama Power Company, 246 Ala. 262, 20 So.2d 224, it appears to us that Count E(1) is sufficient. In the Sullivan case, this court held Count 1 to be sufficient and on that authority we hold the instant Count E(1) also to be sufficient." (273 Ala. 516, 142 So.2d 234.)

Here, Count One charged that the wires, at the time plaintiff was injured, were charged with dangerous quantities of electricity, and the concurring negligence of the defendant in the negligent maintenance of the wires and cables at that place in a condition which was known to it or in the exercise of reasonable care should have been known to it to be weak and unsafe, thereby permitted or caused said wires or cables to fall to the ground when combined with the negligence of the other defendants.

In Goodwyn v. Gibson, 235 Ala. 19, 177 So. 140, a count alleged that the plaintiff, while riding a bicycle, ran into an obstruction in the street while evading a negligent automobile driver; and the demurrer raised the points that the alleged negligence of the defendants was not the proximate cause of plaintiff's injuries, and that his injuries and damages were caused by the negligence of some third person and were not the proximate consequence of the alleged negligence. The demurrer was overruled and we affirmed, holding in part:

"When a person by his negligence produces a dangerous condition of things, which does not become active for mischief until another person has operated upon it by the commission of another

negligent act, which might not unreasonably be anticipated to occur, the original act of negligence is then regarded as the proximate cause of the injury which finally results. Clendenon v. Yarbrough, et al., 233 Ala. 269, 171 So. 277." (235 Ala. 21, 177 So. 142.)

■ Every action in tort consists of three elements: (1) the existence of a legal duty by defendant to plaintiff; (2) a breach of that duty; (3) damage as the proximate result. Butler v. Olshan, 280 Ala. 181, 191 So.2d 7; City of Mobile v. McClure, 221 Ala. 51, 127 So. 832.

■ Here, the complaint clearly shows that the wires of defendant were charged with dangerous quantities of electricity and the pole and the wires it supported were in close and dangerous proximity to the public street. This was sufficient to show a legal duty on the part of defendant to keep the wires from falling on or near the public, of which plaintiff was one, using the street. A breach of that duty is alleged in that the charged wires were weak and unsafe and this condition was known or reasonably should have been known to appellant. There is no question about plaintiff's injuries and damages or that they were caused when an alleged weak and unsafe wire broke and fell to the ground after the pole had been submitted to abnormal but not entirely unforeseeable pressure.

■ As to any technical deficiencies in this or the other two counts, we cite the following from City of Birmingham v. Smith, 231 Ala. 95, 163 So. 611:

"A count which alleges facts from which negligence may be reasonably inferred, followed by averments of negligence, whereby the plaintiff assumes the burden to prove negligence in the particular case, is sufficient. (Citing cases.)" (231 Ala. 97, 163 So. 612.)

Likewise, in Brown v. City of Fairhope, 265 Ala. 596, 93 So.2d 419, we said:

"A count which alleges facts from which negligence may be reasonably inferred, followed by averments of negligence whereby the plaintiff assumes the burden to prove negligence in the particular case, is sufficient as an allegation of defendant's negligence. (Citing cases.)" (265 Ala. 599, 93 So.2d 421.)

We think these principles are applicable here.

■ We hold under our decisions in Alabama Power Co v. Smith, 273 Ala. 509, 142 So.2d 228, and Sullivan v. Alabama Power Co., 246 Ala. 262, 20 So.2d 224, and the other authorities cited supra, that Count One stated a cause of action. We do not say that the three counts in the instant case are wholly free of technical defects, but since a cause of action is stated, we apply the rule that even though there is a defect of averment in stating the cause of action in the complaint, if both parties introduce such relevant evidence as they desire, and the court correctly charges the law on the subject, the ruling of the court in improperly overruling demurrer to the complaint will not be reversed, because it was without injury. Supreme Court Rule 45; City of Mobile v. McClure, 221 Ala. 51, 127 So. 832; Federal Automobile Ins. Ass'n v. Meyers, 218 Ala. 520, 119 So. 230; Southern Ry. Co. v. Dickson, 211 Ala. 481, 100 So. 665; Best Park & Amusement Co. v. Rollins, 192 Ala. 534, 68 So. 417.

We hold that no reversible error was committed in the overruling of the demurrer to Count One.

Assignment of Error 3 charges that the court erred in overruling the demurrer to Count Two of the complaint as last amended, which reads:

"Plaintiff adopts all of the allegations of Count One with the exception of the last paragraph thereof.

"Plaintiff avers that all of the damages and injuries suffered by the Plaintiff, were caused as a direct and proximate

consequence of the negligence of the Defendants, Johnny Gulley and Gladys W. Petrantis in the negligent operation of their said motor vehicles at said time and place and in the combined and concurring negligence of the Defendant, Alabama Power Company, in negligently allowing their said wires or cables which were then and there charged with dangerous quantities of electricity to be and remain in dangerous proximity to said public sidewalk were Plaintiff and other members of the general public with the knowledge of the Defendant, habitually and rightfully resorted, and Plaintiff avers that on said occasion, the location of the Defendant's said wires or cables at said point was without warning to the Plaintiff, that they were dangerous and deadly and Plaintiff avers that said wires or cables on said occasion were uninsulated and that they were allowed by the Defendant to be and remain on said ground at said point in said dangerous and deadly condition for an unreasonable length of time and the Plaintiff avers that as a proximate consequence of said negligence, the Plaintiff came in contact with said wires or cables thereby proximately inflicting upon him the aforesaid injuries, hence this suit."

Here, the alleged negligence of defendant is that the wires were uninsulated and were allowed to remain on the ground in a dangerous condition for an unreasonable length of time.

Assignment of Error 4 charges that the court erred in overruling the demurrer to Count Three of the complaint as last amended, which reads:

"Plaintiff adopts all of the allegations of Count One with the exception of the last paragraph thereof.

"Plaintiff avers that on said occasion the Defendant, Alabama Power Company, in the exercise of reasonable care should have employed and did in fact employ a device in its substation located on New Jersey Street in the City of Mobile, Alabama, known as an oil circuit breaker, which, when properly constructed, adjusted and in proper working order, would deenergize the said Defendant's wires or cables which broke on said occasion when said wires or cables came in contact with the ground. Plaintiff avers that when said Defendant's said wires or cables broke on said occasion at said time and place and came in contact with the ground, that its said oil circuit breaker failed to function properly and allowed its said wires and cables to remain on the ground and charged with dangerous and deadly quantities of electricity and while in said dangerous and deadly condition the Plaintiff came in contact with said wires or cables thereby proximately inflicting upon him the aforesaid injuries.

"Plaintiff avers that all of the damages and injuries suffered by the Plaintiff were caused as a direct and proximate consequence of the negligence of the Defendants, Johnny Gulley and Gladys W. Petrantis in the negligent operation of their said motor vehicles at said time and place and in the combined and concurring negligence of the Defendant, Alabama Power Company, in the construction, maintenance or operation of its said oil circuit breaker system."

Count Three charges that the employed oil circuit breaker, a protective device to deenergize an electric wire when working properly, failed to function properly and allowed the wire to remain energized on the ground and this negligent operation was chargeable to appellant.

█ Based upon the same authorities as discussed as to Count One, we hold that Counts Two and Three as last amended state causes of action and the overruling of the demurrer to each of the counts did not constitute reversible error.

Assignment of Error 9 charges that the trial court erred in refusing to give the

affirmative charge with hypothesis for defendant as to Count One.

■ In civil cases, the question must go to the jury if the evidence arising therefrom furnishes a scintilla in support of the theory; and in considering the propriety of the affirmative charge, we review the tendencies of the evidence most favorable to the plaintiff, regardless of any view we may have as to the weight of the evidence; and we must allow such reasonable inferences as the jury were free to draw, not inferences which we may think the more probable. Glass v. Davison, 276 Ala. 328, 161 So.2d 811; Southern Apartments, Inc. v. Emmett, 269 Ala. 584, 114 So.2d 453; Chesser v. Williams, 268 Ala. 57, 104 So.2d 918.

The theory of Count One is that appellant created a dangerous condition in that its high voltage wires were maintained in a weak and unsafe manner. Evidence to support this or inferences therefrom are: (1) The point where the wire broke was over two spans from the pole which was hit by the automobile; (2) appellant's District Superintendent Cook testified that the pole was not noticeably knocked at an angle; that it was substantially in the same position as it was before the accident; that the bolt on the crossarm on the pole was in good condition after the accident and was not replaced; and that the six-foot section of the wire from one end of the break, retained by appellant, contained nicks or burns or scrapes.

Appellant's trouble man, Greene, testified that the wire that broke had a splice in it a few inches from the break; that it had pitted spots in it, and that it was old copper wire.

Appellant's engineer, McLeod, testified that the wire that broke had been up for years.

A picture of the pole after the accident showing little or no damage to the pole was in evidence for the jury's inspection.

■

■ We think this evidence was sufficient to present a jury question as to whether the wire that burned appellee was weak or unsafe at the time it broke.

■ Unless the evidence is entirely free from doubt or adverse inference, the question is one for the jury; and whether or not plaintiff's injury is the proximate result of defendant's negligence is ordinarily a question for the jury. Alabama Power Co. v. Irwin, 260 Ala. 673, 72 So.2d 300; Sullivan v. Alabama Power Co., 246 Ala. 262, 20 So.2d 224; Briggs v. Birmingham Ry., Light & Power Co., 188 Ala. 262, 66 So. 95.

■ What we said in Liberty National Life Ins. Co. v. Weldon, 267 Ala. 171, 100 So.2d 696, 61 A.L.R.2d 1346, is appropriate here:

"Persons who perpetrate torts are, as a rule, responsible and only responsible for the proximate consequences of the wrongs they commit. In other words, unless the tort be the proximate cause of the injury complained of, there is no legal accountability. Our court has repeatedly dealt with and defined 'proximate cause.' Quite a number of definitions are quoted in Western Railway of Alabama v. Mutch, 97 Ala. 194, 11 So. 894, 21 L.R.A. 316; Mobile & Ohio R. Co. v. Christian Moerlein Brewing Co., 146 Ala. 404, 41 So. 17; Garrett v. Louisville & N. R. Co., 196 Ala. 52, 71 So. 685; and in Dye-Washburn Hotel Co. v. Aldridge, 207 Ala. 471, 93 So. 512. But there is very little use of reviewing our many cases where the question of proximate cause is involved. There are differences in almost every case, and ofttimes the case turns on a slight difference of facts. The general principles of law in relation thereto have been frequently stated and are not so difficult as is their application to the particular circumstances of each individual case." (267 Ala. 186–187, 100 So.2d 709.)

This excerpt shows why we do not apply one of the leading cases cited by ap-

594

pellant, Morgan v. City of Tuscaloosa, 268 Ala. 493, 108 So.2d 342. There, the alleged instrumentality causing the injuries was water which had backed up in the street and when the driver of an automobile ran it into the water, water splashed upon the windshield, blinding the driver, causing him to lose control of the car and strike a pedestrian (plaintiff). There is a tremendous difference between the expected or foreseeable danger in a puddle of water on a street and uninsulated, charged or live electric wires. The difference in the instrumentality, water as opposed to electricity, is one of the reasons why we do not consider the Morgan case, supra, apt authority.

The trial court did not err in refusing the requested affirmative charge as to Count One.

■ The next argued assignment of error is that the court erred in refusing to give the requested affirmative charge with hypothesis to Count Two. This count charged that appellant was negligent in that the wires were uninsulated and were allowed to remain on the ground in a dangerous condition for an unreasonable length of time. Appellee's contention is that appellant was negligent in improperly locating its fuse cutout at a point two spans off the main line rather than at the junction pole.

The main or primary power line ran east and west along the south side of Elmira Street and the junction pole was located near the southeast corner of the intersection of Elmira Street and Washington Avenue. The tap line for Washington Avenue left the junction pole, ran to pole No. 1, the transformer pole located on the west side of Washington Avenue (all the other poles in question were also on the west side). Pole No. 2 was the fuse pole; pole No. 3 was near the northwest corner of the intersection of Washington Avenue and Selma Street where the Gulley automobile hit the Petrantis automobile. Pole No. 4, the accident pole, was farther northward on Washington Avenue. The charged wire with which the plaintiff came in contact had broken between pole No. 1 and pole No. 2, nearer to pole No. 2, which was the fuse pole.

Appellee adduced evidence that the fuse cutout was placed on the Washington Street tap line on pole No. 2, leaving two spans, junction pole to pole No. 1 and pole 1 to pole 2, unprotected by the fuse cutout; that the fuse cutout would afford the greatest protection to the public if located at the junction pole, and that the fuse should be placed in the line near the source of supply (the main or primary line at the junction pole) because "if anything happens to the line in question and the fuse is placed at the point of supply, then that entire line is protected and any abnormal condition anywhere on that line will cause the fuse to operate," and when the fuse operates properly, the line becomes deenergized; that the fuse cutout operates almost instantaneously, that there were no overcurrent protective devices between the fault and the substation circuit breaker; that the circuit breaker did operate, and if there was sufficient "ground" on the line because over 100 feet of the uninsulated wire was lying on the ground, it was both possible and probable that it would also blow the fuse; that the fuse was installed to knock out the line, to keep from interfering with the power coming down the main line and to protect people who might come in contact with the line if broken and on the ground; that appellee did not come in contact with the electrified wire until over a minute after the accident.

Appellant submitted evidence that there was not sufficient reflow of current to operate the fuse even if it had been located between the junction pole and the span which broke and injured plaintiff. This evidence merely produced another question of fact for the jury.

We are convinced that the trial court did not err in refusing to give the affirmative charge with hypothesis as to Count Two as amended.

■ Assignment of Error 11 charges that the trial court erred in refusing to give the requested affirmative charge with hypothesis as to Count Three as amended.

Count Three alleges that appellant employed a device known as an oil circuit breaker designed to deenergize its wires when those wires contacted the ground and that appellee's injuries were caused as the proximate result of appellant's negligence in the maintenance, construction or operation of its oil circuit breaker system.

The appellee's evidence on this point consisted in part of appellant's own report of the accident, made in the usual course of business, which stated in part:

" '* * * Greene reported at 5:18 P.M. that a 6 HDB cu. primary conductor was broken as a result of the accident and that the police said a small boy had been burned when he contacted the fallen wire. The injured boy, Joseph Guy, age 6, had been carried to Mobile General Hospital before Greene arrived at the scene of the accident. It was later found that the boy suffered third degree burns on his right forearm and hand and right chest wall.

"The primary phase wire that was down fed from the Elmira Street 4/0 ACBR 4 kv feeder from ACB 26658 at the New Jersey Street Substation. There were no over current protective devices between the fault and the substation circuit breaker. An instantaneous target was found on the ground relay and the counter reading showed two circuit breaker operations between October 6 and October 8. The circuit breaker did not lock out at the time of the accident.' And it is signed by J. W. Cook,—it is not signed, it is typed in, 'J.W. Cook, District Superintendent, October 11, 1960' "

There was evidence that when the wire broke and fell, the wire could not have been charged with electricity more than a minute after it broke and touched the ground, assuming that there was a "ground" sufficient to operate the oil circuit breaker at the substation, and also assuming that the oil circuit breaker was working properly. Both appellee's electrical expert Lucas, and appellant's District Superintendent Cook testified that a properly working oil circuit breaker would deenergize the line in "less than a minute, much less than a minute" (Lucas) and the line would not be live "for more than a minute after the break" (Cook).

According to appellant's report of the cause of the accident, supra, the recording device between October 6 and 8 showed an instantaneous target and two circuit breaker operations and that the circuit breaker did not lock out at the time of the accident. Evidence also showed that the wire was still live with electricity about one-half hour after it broke.

There was evidence, already mentioned, that appellee did not start back from the corner, when the cars collided, to the point where the wire broke until after "a good minute or more."

Appellant adduced testimony to rebut some of the evidence listed supra in behalf of appellee. It is sufficient to say that we think the evidence was sufficient to make a jury question as to the negligence charged in Count Three as amended.

■ Appellant also urges that there was no proof that the failure of the oil circuit breaker to function properly (Count Three), or the operation or location of the line fuse (Count Two) as being the proximate cause of plaintiff's injuries as alleged in each count. Under the same authorities cited in our discussion of this contention as to Count One, we hold that a jury question on proximate cause was presented and the trial court so charged the jury.

■ Finally, appellant argues Assignment of Error 7, which charges error in the overruling of the motion for a new

trial on the ground that the verdict was contrary to the great weight of the evidence. We cannot agree. As already shown in this opinion, there was substantial evidence which not only supported the trial court's action in submitting the case to the jury, but it also supported the verdict.

While it was not raised on appeal, we note that there is no contention by appellant here that the amount of damages awarded is excessive, unjust or unfair.

We have found no reversible error in any of the rulings of the trial court assigned and argued as being erroneous.

Affirmed.

LIVINGSTON, C. J., and MERRILL, COLEMAN and HARWOOD, JJ., concur.

LAWSON and GOODWYN, JJ., dissent.

LAWSON, Justice (dissenting).

I entertain the view that the trial court erred in overruling those grounds of appellant's demurrer directed to Counts One, Two and Three as finally amended which took the point that the count shows on its face that the negligence, if any, of the appellant was not the proximate cause of the injury to Joseph Guy; that his injury resulted from an independent, intervening, efficient cause, not reasonably foreseeable by appellant, the act of the Petrantis automobile running into the appellant's electric light pole.

Generally, the question of proximate cause is for the jury. But when the facts are such that reasonable men must draw the same conclusion, the question of proximate cause is one of law for the courts. City of Birmingham v. Latham, 230 Ala. 601, 162 So. 675; Morgan Hill Paving Co. v. Fonville, 218 Ala. 566, 119 So. 610; Morgan v. City of Tuscaloosa, 268 Ala. 493, 108 So.2d 342. In the case last cited we said, in effect, that where a count shows on its face that the negligence charged against a defendant was not the proximate cause of the plaintiff's injury, it is the duty of the court to sustain apt demurrer to the count.

In several decisions dealing with negligence as the proximate cause, when some agency has intervened and has been the immediate cause of the injury, we have said that the party guilty of negligence in the first instance is not responsible, unless at the time of the original negligence the act of the agency could not have been reasonably foreseen. If the act of the intervening agency could have been reasonably foreseen the causal chain is not broken. But if the injury results from an independent, intervening, efficient cause, not reasonably to be anticipated, to wit, the act of a third person, the negligence shown, if any, is not the proximate cause of the injury. Clendenon v. Yarbrough, 233 Ala. 269, 171 So. 277; Louisville & N. R. Co. v. Maddox, 236 Ala. 594, 183 So. 849, 118 A.L.R. 1318; Louisville & N. R. Co. v. Courson, 234 Ala. 273, 174 So. 474, and cases cited; Mahone v. Birmingham Electric Co., 261 Ala. 132, 73 So.2d 378; Liberty National Life Ins. Co. v. Weldon, 267 Ala. 171, 100 So.2d 696, 61 A.L.R.2d 1346.

It would be useless to attempt to review our many cases where the question of proximate cause is involved. There are differences in almost every case and often the decision reached has turned on a slight difference of allegation or fact.

We have been cited to no Alabama case and my research has disclosed no Alabama case similar to the case at bar.

Each of the counts presently under consideration, when construed most strongly against appellees, shows that the electric light pole which the Petrantis car hit was not situated in the travelled portion of the street or in such close proximity thereto as to constitute an obstruction dangerous to anyone properly using the street.

It may be stated as a general proposition that a company lawfully maintaining poles in or near a public highway is not liable for the damage to person or property resulting from a road vehicle striking such pole, unless it is erected on the travelled portion of the highway or in such close proximity thereto as to constitute an obstruction dangerous to anyone properly using the highway and the location of the pole is the proximate cause of the collision. Annotation, 82 A.L.R. 395; 18 Am.Jur., § 92, p. 484.

This rule is well illustrated by the case of Indiana Service Corp. v. Johnston, 109 Ind.App. 204, 34 N.E.2d 157 (1941) pertinent portions of which are as follows:

"An essential element of proximate cause is the requirement that the result must be such as might reasonably have been anticipated in the ordinary experience of men. In applying this rule to a case like the instant one, wherein the alleged negligence merely created a condition by which the injury was made possible and the subsequent independent act of an intervening agency caused the injury, logic requires not only that the type of injury should have been reasonably anticipated but that the intervention of the independent agency should have been anticipated.

\* \* \* \* \* \*

"Our inquiry in the instant case may well be directed then to the question as to whether appellant should have anticipated that the driver of an automobile would negligently drive his car off the traveled portion of the highway over the curb and into one of its poles with sufficient force to affect a connecting pole 150 feet away. The inquiry is self-answering. In this day when the streets and highways are being constantly used by automobiles, tractors and trucks of great weight and power, it would be unreasonable indeed to hold that companies maintaining poles adjoining the streets and highways must maintain their poles

not only in such condition as to be safe in regard to ordinary hazards, but also in such condition as to resist the weight and force of any cars, tractors or trucks which might be negligently driven off the highway and into them. They are neither bound by duty to so maintain their property, nor are such acts on the part of the drivers of vehicles reasonably to be anticipated." (34 N.E.2d 158)

In Woody v. South Carolina Power Co., 202 S.C. 73, 24 S.E.2d 121, the Supreme Court of South Carolina reached a similar result. In that case the court held:

"It seems to us that the wrongful act of the truck driver and its results could not reasonably have been foreseen in the circumstance. No one lawfully using the highway could possibly have come in contact with the pole. The defendant could not reasonably have anticipated the fact that the driver of a truck would wrongfully drive it over the edge of the highway, across the ditch, and strike the pole with such force as to knock a wire loose from it.

"We think that the only reasonable inference which may be drawn from the evidence is that the intervening act of the truck driver was a new and independent force which broke the causal connection between the defendant's act and the plaintiff's unfortunate injury; that it was the sole proximate cause, and that the negligence of the defendant, if it existed, was a remote and not a proximate cause of it; it merely brought about a condition and was not a concurrent proximate cause of the injuries." (24 S.E.2d 126)

In Vines v. Southwestern Miss. Electric Power Ass'n, 241 Miss. 120, 129 So.2d 396, the Supreme Court of Mississippi in a case somewhat similar to the case at bar said in part:

"\* \* \* There is nothing in this case indicating that the public in making proper use of the road, would reasonably come into contact with the power wires. Of

course, when they are knocked down, they become dangerous, but danger is not synonymous with negligence; and where the danger results solely from the careless act of another in causing the power lines to be knocked down, as was the case here, we do not think the degree of care required makes it a jury case." (129 So. 2d 399.)

In Alford v. Washington et al., 238 N.C. 694, 78 S.E.2d 915, the allegations of the complaint, as set out in the report of the case, are strikingly similar to averments of Count One in this case. The suit was brought by Alford on behalf of Charles S. Alford, Jr., his intestate, against the City of Kinston and one Washington. The trial court sustained the demurrer interposed by the City of Kinston and dismissed the action as to it. From that ruling, Alford, the plaintiff, appealed. The trial court overruled Washington's demurrer. He excepted to that ruling and appealed, but his appeal is not material here. One of the grounds of demurrer interposed by the City of Kinston reads: "That the sole and proximate cause of death of plaintiff's intestate was the negligence of defendant Washington." The Supreme Court of North Carolina upheld the action of the trial court sustaining the demurrer of the City of Kinston, saying:

"And while it is alleged that the city of Kinston should have foreseen that motor vehicles would collide at the intersection in question, and come into contact with the light poles of the city's lighting system,—this is a conclusion that does not follow the law. 'One is not under a duty of anticipating negligence on the part of others, but in the absence of anything which gives or should give notice to the contrary a person is entitled to assume, and to act on the assumption, that others will exercise ordinary care for their own safety'. 65 C.J.S., Negligence, § 15. See Shirley v. Ayers, 201 N.C. 51, 158 S.E. 840; Murray v. Atlantic Coast Line R. Co., 218 N.C. 392, 11 S.E. 2d 326; Hobbs v. Queen City Coach Co.,

225 N.C. 323, 34 S.E.2d 211." (78 S.E. 2d 919.)

Another case to the same effect as those from which I have quoted above is Roadman v. Bellone et al., 379 Pa. 483, 108 A. 2d 754.

The case of Gibson v. Garcia et al., 96 Cal.App.2d 681, 216 P.2d 119, cited by appellees, is not in accord with the cases to which I have heretofore referred, but in my opinion the statements of law in the Garcia case, supra, regarding independent intervening causes are not in accord with the rulings of the majority of our cases on this subject, nor in fact with the great majority of cases from other jurisdictions dealing with this or a similar fact situation.

This case has been pending in this court much too long. I wish to make it clear that the delay has been the fault of the writer of this dissent.

I would reverse the judgments of the trial court for the reason stated in the opening paragraph of this dissenting opinion.

GOODWYN, J., concurs in this dissent.