Terry J. Firman, an Infant, by William D. Firman, His Guardian ad Litem, Appellant, *v.* Burton Sacia, Respondent.

William D. Firman, Appellant, *v.* Burton Sacia, Respondent.

Third Department, April 29, 1959.

*Robert H. Ecker* for appellants.

*Mullarkey & Horigan* (*Lewis M. Mullarkey* of counsel), for respondent.

Gibson, J.  In a case of first impression, the Special Term has held legally insufficient a complaint which would relate the infant plaintiff's personal injuries from gunshot wounds inflicted by one Richard Springstead on March 12, 1957 to defendant's negligent operation of his automobile on February 6, 1950, whereby Springstead, then three years old, was struck by the automobile and caused to sustain injuries to his brain.  The theory of the causal relationship asserted is amplified in a bill of particulars which states: " 3. By reason of the injuries

sustained by Richard Springstead as a result of the defendant's negligence, he, at the time of the shooting, was prevented from and unable to realize the nature and consequence of his act, was not able to resist pulling the trigger of the rifle, and was deprived of capacity to govern his conduct in accordance with reason." Springstead's injuries are alleged to have resulted " in brain irritability and epilepsy with psychomotor equivalent of epileptic attacks." A supplemental bill of particulars states: " Medically speaking it will not be claimed that he is or was ' insane ' or ' incompetent '." There follows in this bill, however, an indefinite and conditional suggestion of insanity " in the legal sense ".

Appellants urge as analogous here the principle expressed by way of dictum in certain suicide cases, and adopted by the American Law Institute, which would render one whose negligence caused the insanity of another liable for the latter's self-injury by his involuntary and insane act. (See *Daniels* v. *New York, New Haven & Hartford R. R. Co.,* 183 Mass. 393 and other cases cited in Prosser, Law of Torts [2d ed.], pp. 273–274, notes 79–82; and, see, Restatement, Torts, § 455, p. 1211.) Actually, recovery was denied in each of the cited suicide cases predicated on negligence and in others as well (e.g., *McMahon* v. *City of New York,* 16 Misc 2d 143, 145, affd. 3 A D 2d 713) but the principles discussed as dicta have been treated as authoritative. There is lacking here, however, the sense of immediacy and that of urgent compulsion implicit in the " frenzy " and the " delirium " to which these authorities refer; and the " insanity " in terms of medical usage which, in context, seems there to be clearly implied is here expressly denied. The effect, it seems to us, is to emphasize the remote degree of the consequences which plaintiffs assert. A somewhat different factual situation was presented in *Lynch* v. *Fisher* (34 So. 2d 513 [La.]), upon which plaintiffs rely, but the decision seems to us inapposite in any event. In that case, moments after a collision of motor vehicles, plaintiff was shot in the leg by one driver who was delirious from injury and shock proximately caused by the negligence of the other operator, and plaintiff's recovery against the latter was sustained. It is clear from the opinion that plaintiff's status as a rescuer was a predicate of the liability found (see opinion, pp. 516, 517, 518, citing Restatement, Torts, § 472, p. 1242, and Ann. 19 A. L. R. 13). Further, the Louisiana court declined to apply the test of foreseeability, which we deem pertinent here, but followed instead the " substantial factor " principle, citing section 435 of the Restatement of the Law of Torts

as then constituted, but since modified (see 1948 Supp.). We fail to find these or appellants' other authorities persuasive.

Assuming, as we must, that defendant's conduct was negligent as it related to the rights of the Springstead child, the fact of negligence was not, of course, thereby established for all purposes or as necessarily definitive of defendant's relationship to others. If, in his conduct, there was no risk of danger to this infant plaintiff " reasonably to be perceived ", there was to breach of duty, or negligence, as to him. (*Palsgraf* v. *Long Is. R. R. Co.*, 248 N. Y. 339, 344.) In this case, the order and judgment seem to us sustainable on the grounds that, as in *Palsgraf* (pp. 344, 345), the risk was not "within the range of apprehension ". Whether the doctrine of foreseeability be regarded as the measure of a duty or as a test of proximate causation seems of little moment as respects the result here. (Cf. 2 Harper and James, Law of Torts, pp. 1022–1023.) If there is, indeed, a distinction, its academic nature is implicit in the comparatively recent holding that the rule in *Palsgraf* " lends guidance in evaluating the proximate causal factor in a given fact situation " and, at the same time " does suggest the only available co-ordinates — duty and foreseeability." (*Williams* v. *State of New York*, 308 N. Y. 548, 554.) In the case cited, recovery was denied on the ground that the conduct of an escaped prisoner toward claimant's testator was not a " ' risk reasonably to be perceived ' ", — that the negligence asserted against the State " was not joined to [testator's] death by the element of foreseeability ". (*Williams* v. *State of New York, supra*, p. 556.) Giving the pleadings before us the most favorable intendment, there seems less reason to foresee the injury to plaintiff in consequence of defendant's negligence than there was in the *Williams* case to anticipate that even a normally docile prisoner, at large because of the State's negligence, might in the course of his escape do harm to some member of the public. Indeed, the asserted result in this case, when viewed in retrospect, seems so " highly extraordinary " as to negate any theory of defendant's responsibility. (Restatement, Torts, § 435, subd. [2], [1948 Supp.].)

Although, as we have found, the determination at Special Term was proper under the principle of the *Palsgraf* case (*supra*), consideration of the problem as one of proximate cause, without recourse to the test of foreseeability as such, as strongly mandates the same result. Even if some basis of causation in the general sense or " cause in fact " be admitted (see *Rugg* v. *State of New York*, 284 App. Div. 179, 182), any reasonable mind would have to account the asserted consequences of defendant's

acts as too remote for legal recognition. Reasons of policy, as well as good sense, forbid an illimitable extension of liability for a train of events proceeding into the indefinite future with arguable dependence (usually in decreasing degree) upon the original act. '' What constitutes a proximate result is not a problem of philosophy. ' The law solves these problems pragmatically.' (*Bird* v. *St. Paul F. & M. Ins. Co.*, 224 N. Y. 47, 52.) * * * Liability for damages caused by wrong ceases at a point dictated by public policy or common sense." (*Milks* v. *McIver*, 264 N. Y. 267, 269.)

The judgment should be affirmed, without costs.

BERGAN, J. P., COON, HERLIHY and REYNOLDS, JJ., concur.

Judgment affirmed, without costs.