James V. McLEAN et al., Plaintiffs,

v.

L. P. W. REALTY COMPANY et al., Defendants.

GULF OIL CORPORATION, Defendant and Third-Party Plaintiff,

v.

BEAMAN CORPORATION and United Porcelain Co., Inc., Third- Party Defendants.

No. 67 Civ. 4959.

United States District Court, S. D. New York.

May 7, 1974.

Emile Z. Berman and A. Harold Frost, New York City, by Marvin V. Ausubel, Howard M. Goldstein, New York City, of counsel, for plaintiffs.

Furey & Mooney, Hempstead, N. Y. by James M. Furey, Hempstead, N. Y., of counsel, for Gulf Oil.

Schaffner & D'Onofrio, New York City, by William A. Dubrowski, New York City, of counsel, for Beaman.

Alexander, Ash, Schwartz & Cohen, New York City, by Irwin H. Haut, New York City, of counsel, for United Porcelain.

## MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

The plaintiffs in this action were working on the installation of an "overhang" on a Gulf service station when the overhang tore loose from its moorings and hurled plaintiffs to the ground to their considerable damage. So far as relevant to this motion, the parties— other than plaintiffs—are: Gulf Oil Company, the owner[1] of the service station; Beaman Corporation, which had contracted with Gulf to build and install the overhang, and to indemnify it from any liability that might result from such work; and United Porcelain Co., Inc., which had contracted with Beaman to provide the labor for the installation. Plaintiffs' suit, in negligence, was against Gulf. Gulf claimed over against Beaman on its indemnity. Beaman asserted a further claim over against United Porcelain on its implied warranty of good workmanship.

So far as here relevant, the jury found: that Gulf was negligent and that plaintiffs were wholly free of contributory negligence; that Beaman was liable over to Gulf on its indemnity agreement; and that negligence imputed to United Porcelain rendered it liable over to Beaman.[2]

United Porcelain, at the close of the evidence, had moved for a directed verdict on the ground that any verdict against Gulf would necessarily presuppose exoneration of United Porcelain's employees (the plaintiffs) from any negligence, and that such exoneration of its employees would necessarily free it of liability. Now that the jury has specifically made the findings of exoneration, United Porcelain renews its motion.

The essential facts are simple. Gulf, like several other oil companies, was in the late sixties engaged in a program of beautifying its service stations. So far

---

1. Actually Gulf was a tenant under a long-term lease, but for purposes of this motion it may properly be treated as the owner.

2. The jury limited United Porcelain's liability to 30% and Beaman seeks to have it increased to 100%. In view of the disposition of United Porcelain's motion, Beaman's said claim becomes moot.

as here relevant, the program included the installation of an "overhang" over at least one facade of the station. This "overhang" was placed over the top of the building's wall and extended about two feet from the face of the wall. (There were other facets to the beautification program, but this opinion will treat the matter as though only the overhang were involved.)

The method of operation as between the three defendant companies was as follows: Gulf had a master contract with Beaman providing for the installation of these overhangs at a fixed schedule of prices. When Gulf decided to beautify a particular station, it would notify Beaman, and an architect would be sent to prepare a blueprint. The record is not clear as to whether the architect was employed by Gulf or Beaman. In any event, each received a copy of the blueprint and the name of each appeared thereon. Some time after receiving the blueprint, Gulf would direct Beaman to proceed and Beaman would manufacture the overhang and direct United Porcelain to install it. United Porcelain performed no function except supply the labor to do the installing. All design and engineering was completed before United Porcelain was called into the situation.

The method of installation was simple. The overhang never became a structural part of the building, but was merely placed over the top of one of the walls and was attached thereto and supported by triangular metal braces. The braces, in turn, were affixed to the wall in a simple manner. Metal plates were attached to the wall by rivets driven deep into the masonry, and the braces in turn were riveted to the metal plates. The function of the metal plates was obviously to distribute the weight of the overhang over the entire surface of the plates rather than having the weight rest solely on rivet points in the wall.

A cross-section of the completed assembly would look as follows:

It can readily be observed that it is essential to the stability of the above-pictured structure that the top of the triangular brace upon which the overhang rests be flush with the top of the supporting metal plate.

Beaman and United Porcelain (acting for Gulf and various other oil companies) had—prior to the instant accident—installed some seventy such overhangs in routine fashion and without incident. The instant installation presented a problem in that the gas station's wall was surmounted by a concrete coping which extended an inch or two over the edge of the wall, preventing the necessary flush relationship between the triangular brace and its supporting metal plate. Any competent professional who carefully examined the wall would have realized that the above-described standard procedures were inappropriate. It would obviously have been impossible to install the metal plate (which must adhere to the wall) in such a manner that its top would be level with the top of the coping. It could only extend to the bottom of the coping (see Exhibit 14G–1). Consequently, either the coping would have to have been removed so that the overhang assembly would be flush with the top of the wall, or an additional element—of the same depth as the coping—would have to have been supplied for insertion between the triangular brace and the overhang so that the top of the brace could have been level with the top of the metal plate to which it was attached. In such situation it would have been the new element upon which the overhang actually rested.

However, the architect's blueprints do not signal the problem, and Beaman delivered to United Porcelain the overhang's normal components, with no indication that they should be dealt with in anything but routine fashion.[3]

Plaintiffs, acting on United Porcelain's behalf and apparently following the blueprints as best they could, installed the triangular braces by driving the top two rivets *not* into the weight-distributing metal plates, but into the ornamental coping (see Exhibit 14G–1).

Not unpredictably, when the plaintiff workmen put their weight on the overhang in the course of installing lights on its outer edge, the coping gave way and the whole structure collapsed (see Exhibit 14G–1). Testimony offered by Beaman established that the men's weight on the overhang could not possibly have caused the accident had the overhang been properly installed.

The cause of the accident being obvious, two basic questions were put before the jury:

(1) Was Gulf negligent in failing to warn the plaintiffs of the danger inherent in installing the overhang in accordance with the blueprint; and

(2) Were plaintiffs negligent in not themselves perceiving the danger, or were they justified in simply following instructions given them by Gulf and Beaman?

The jury answered both questions in plaintiffs' favor.

United Porcelain takes the position that since the jury exonerated its employees (i. e. plaintiffs) of negligence, there is no basis for imputing negligence to it (United Porcelain). Beaman counters with the contention that the jury had the right to find United Porcelain negligent in failing to provide its employees with scaffolding on which they could have stood while doing their work rather than working from the top of the overhang. Had they been standing on a scaffold, their weight could not, of course, have caused the overhang to fall.

3. The witnesses who testified concerning the blueprint seem to have been in doubt as to whether it showed the coping. In any event, Gulf is clearly chargeable with knowledge of the structure of its own building, and the blueprint should have made clear that some modification of the standard design was required to take into account the problem posed by the coping.

There seem to be two conclusive answers to Beaman's contention. First, the only purpose in providing a scaffold would have been to guard against the danger of the plaintiffs falling *off* the overhang. Assuming proper construction (upon which assumption the jury found plaintiffs entitled to rely), there would have been no other danger to guard against. But there appears never to have been any danger of their falling off, at least no such danger eventuated. It follows that United Porcelain's negligence, if any, had no part in causing the accident. See *Firman v. Sacia* (3d Dept. 1959) 7 A.D.2d 579, 184 N.Y.S.2d 945; *Bolsenbroek v. Tully & DiNapoli, Inc.* (1st Dept. 1961) 12 A.D. 2d 376, 212 N.Y.S.2d 323, *aff'd,* 10 N.Y. 2d 960, 221 N.Y.S.2d 507, 178 N.E.2d 224; *O'Brien v. Fallmore Cab* (2d Dept. 1963) 18 A.D.2d 1078, 239 N.Y.S.2d 380, *aff'd,* (1964) 15 N.Y.2d 648, 255 N.Y.S. 2d 868, 204 N.E.2d 200.

In the second place, plaintiffs' evidence and evidence offered by Beaman established that it had not been the practice to employ scaffolds on the seventy prior jobs upon which United Porcelain and Beaman had worked, and that Beaman was aware of this practice. There is no suggestion that Beaman ever requested the use of scaffolds. Indeed, the witness for Beaman was specifically asked whether such a request had been made and testified that he had no knowledge of any having been made. In the circumstances, Beaman is in no position to impute negligence to United Porcelain on the ground that it had followed its usual procedures in the instant case.

United Porcelain's motion for judgment notwithstanding the verdict is accordingly granted, and the claim-over is dismissed as to it.

So ordered.