346 So.2d 393 (1977)
CITY OF MOBILE, a Municipal Corporation
v.
Florence Ruth LARGAY.
SC 1881.
Supreme Court of Alabama.
May 20, 1977.
Robert C. Campbell, III, Mobile, for appellant.
James A. Yance of Cunningham, Bounds, Byrd, Yance & Crowder, Mobile, for appellee.
PER CURIAM.
Defendant, City of Mobile, appeals from a judgment and jury verdict of $25,253 awarded plaintiff, Florence Ruth Largay, and from denial of its motion for new trial. We hold that the trial court erred in submitting the case to the jury on the issue of proximate cause. We reverse and render.
At approximately 3:00 p. m. on October 25, 1974, in broad, open daylight, plaintiff, a 19-year-old college student who worked part time for the Mobile Press-Register, parked her car in a public parking space on Franklin Street in Mobile, Alabama, alongside a vacant city museum building known as the Old Roche Building. As she was getting out of her car, an unidentified black male proceeded to cross the street towards her car and spoke to her. The black male *394 had come from the opposite side of Franklin Street. She turned back to her car and picked up some papers. When she stood up beside the car to close the door, the same man was standing immediately in front of her. He pulled a knife and forced her into her car. She fought back, grabbed the knife and screamed. She was cut by the knife and pushed down on the floorboard. The assailant tried to start the car six or seven times. Failing in his attempt to start it, he dragged her down the sidewalk and through an open cellar door into the vacant city museum building owned by the City of Mobile. She was blindfolded and her hands were tied behind her back with a belt. The assailant beat her, raped her, and left her for dead. The man has not been apprehended. Plaintiff finally worked her hands loose from the belt and made her way back to the street, where she was able to obtain the assistance of two fellow employees who had just parked their cars on their way to work.
The building where this assault occurred was purchased by the City of Mobile in 1972. It had previously been owned by the Housing Authority. It was used as a museum for approximately four years. In March 1973, it was closed to the public for restoration. The evidence showed that city employees checked the building about once a week. The fully restored museum was re-opened on February 8, 1976. There was some testimony which indicated that prior to this incident the building had been broken into on several occasions. According to other testimony, "winos" and derelicts slept in the cellar area of the building; wine and whiskey bottles littered the area in and around the building; and cars parked in the vicinity of the building had been broken into. Photographs taken immediately following the incident and introduced into evidence show the building in a state of disrepair.
Plaintiff sued the City of Mobile and a jury rendered a verdict in her favor in the amount of $25,253. The City, having moved for a directed verdict at the close of plaintiff's case, then moved for judgment notwithstanding the verdict or a new trial. The motion was denied. The City appeals.
The City raises the following issues on appeal:
I. Whether the doctrine of municipal immunity operates as a bar to the plaintiff's recovery.
II. Whether plaintiff was a trespasser on the property owned by the City, and thus the legal duty owed her by the City was merely not to injure her intentionally or wantonly.
III. Whether the proximate cause of plaintiff's injuries was the act of the unidentified assailant. Or, stated otherwise, whether his criminal act was an efficient superseding, or independent intervening, cause and relieved the City of any liability.

I. Municipal Immunity

Because this case arose before Jackson v. City of Florence, 294 Ala. 592, 320 So.2d 68 (1975), the City contends that, if the ownership and operation of this building was a governmental function, the plaintiff's case is barred.
In view of the result which we reach on the issue of proximate cause, we find it unnecessary to address this issue.

II. City's Duty as a Property Owner

Although we entertain grave doubts concerning the duty owed plaintiff by the City, we pretermit consideration of that issue, too, because of the result which we reach on the issue of proximate cause.

III. Proximate Cause

The third issue raised by the City is dispositive of this appeal: Was the issue of proximate cause properly submitted to the jury, or should the trial court have ruled, as a matter of law, that the City's allegedly negligent maintenance of its building was not a proximate cause of plaintiff's injuries?
Solely for purposes of deciding this issue, we assume, since the jury must have so found, that the City had negligently maintained the building. But, as this Court *395 stated in Vines v. Plantation Motor Lodge, 336 So.2d 1338, 1339 (Ala.1976):
"Negligence alone does not afford a cause of action. Liability will be imposed only when negligence is the proximate cause of injury; injury must be a natural and probable consequence of the negligent act or omission which an ordinarily prudent person ought reasonably to foresee would result in injury. If, between the alleged negligent act or omission and the injury, there occurs an independent, intervening, unforeseeable event, the causal connection between the alleged negligence and the injury is broken. Mobile City Lines, Inc. v. Proctor, 272 Ala. 217, 130 So.2d 388 (1961) . . . ."
"The key here is foreseeability. This court has held many times that a person, who by some act or omission sets in motion a series of events, is not responsible for consequences of intervention of another agency, unless at the time of his original act or omission, the act of the intervening agency could reasonably be foreseen. If so, the causal chain is not broken. If the injury results from an independent intervening, efficient cause, not reasonably foreseeable, the original negligent act or omission is not the proximate cause of injury. . . ."
Generally, we have held that the issue of proximate cause is a question for the jury. Alabama Power Co. v. Guy, 281 Ala. 583, 593, 206 So.2d 594 (1967). This general rule is not applicable when the evidence establishes no reasonable inference in support of a plaintiff's claim. Williamson v. Birmingham Transit Corp., 344 So.2d 489 (Ala.1977). Where the evidence, when viewed in the light most favorable to the party against whom a motion for a directed verdict has been granted, establishes no such inference, the moving party is entitled to a directed verdict.
We hold that the evidence in the present case fails to establish any reasonable inference in support of plaintiff's case on the issue of proximate cause and that the trial court erred in denying the City's motion for a directed verdict on that issue.
To hold otherwise would be directly contrary to our recent decision in Vines v. Plantation Motor Lodge, supra, and would have the effect of overruling that case. Fines is directly in point.
In Vines, the defendants had, in violation of a city ordinance, left their truck unlocked with the keys in the ignition. The truck, which was parked in a dark alley behind defendants' business (in a high crime rate area,) was stolen by a teenager, who was apparently under the influence of drugs and who drove it in such a manner that it collided with the motorcycle on which Bobby Dean Vines and her husband Gary were riding. Gary was killed.
Although this Court observed that an alarming number of auto thefts occur when keys are left in the vehicle and that a substantial proportion of stolen vehicles are involved in accidents, we held that the thief's negligent driving was the proximate cause of the injuries and that the consequences of the theft were too remote to have been reasonably foreseeable by defendants when they left the truck unattended with the keys in the ignition. The Court affirmed the trial court's grant of summary judgment in favor of defendants.
In the present case, the criminal act was at least as unforeseeable as that in Vines. Clearly, the assailant did not even intend to use the building until his first plan to carry the plaintiff away was thwarted when he was unable to start her car. Only when he failed after six or seven attempts to start the car, did he resort to the unlocked cellar.
We hold, as a matter of law, that the use of the unlocked cellar for the perpetration of rape was not a reasonably foreseeable consequence of the City's failure to maintain the building.
REVERSED AND RENDERED.
TORBERT, C. J., and BLOODWORTH, MADDOX, FAULKNER, ALMON, SHORES, EMBRY and BEATTY, JJ., concur.
JONES, J., dissents.
*396 JONES, Justice (dissenting):
I respectfully dissent. Because I reach a different conclusion than that reached by the majority on the issue of proximate cause (and I because I would affirm), I will address all three issues:
I. Municipal Immunity
II. Duty
III. Proximate Cause

I. Municipal Immunity

Because this case arose before Jackson v. City of Florence, 294 Ala. 592, 320 So.2d 68 (1975), I agree with the City's contention that, if the ownership and operation of this building was a governmental function, the plaintiff's case is barred. The City's "governmental immunity" defense is to be tested by the pre-Jackson standard which is based on the governmental/proprietary distinction.
Initially, then, we must determine if the trial Judge was correct in submitting to the jury the factual determination whether this building was being operated as a museum (the contention of the City), or had been abandoned for any use (contention of the plaintiff). The trial Judge charged the jury as follows:
"I charge you that on the question of a museum that the burden is on the plaintiff to reasonably satisfy you that the building was not serving as a museum in October of 1974."
After defining "museum," the trial Judge continued:
"I charge you that if the building had been established as a museum, the fact that it was closed for a renovation would not in and of itself make it stop being a museum; I charge you that you must determine from all of the facts, from all of the evidence and circumstances of this case covering the period from 1969 until October of 1974 whether you are reasonably satisfied that it was not serving as a museum. If you are not reasonably satisfied that it was not serving as a museum in October of 1974, the plaintiff would not be entitled to any further consideration in this case, and the city's immunity would demand that you return a verdict, `We, the jury, find for the defendant.'"
Implicit in this instruction is the ruling by the trial Court that the City's operation of this building for the purposes of a museum is a governmental function, thus entitling the City to immunity from suit; or, stated conversely, the City's abandonment of this building and its nonuse constitutes a proprietary function, rendering the City liable for injuries proximately resulting from the negligent maintenance of a building. The factual issue as to its use was properly submitted to the jury under the appropriate instructions. I agree with the statement in Sturzinger v. City of Sandusky, 28 Ohio App. 263, 162 N.E. 684 (1929):
"It is the use to which the property is put at the time of the accident which determines the applicability of governmental immunity."
The factual question concerning the use of this building at the time Ms. Largay was raped was properly submitted for the jury's determination. Therefore, I would hold that the trial Court's ruling concerning governmental immunity was correct.

II. City's Duty as Property Owner

The City contends that Ms. Largay was a trespasser and as such the only duty the City owed was not to wantonly injure her. I do not agree. It is important to analyze the act of Ms. Largay which constitutes the alleged trespass. The City argues that the act of the unknown assailant forcing Ms. Largay into the building was an act of trespass by the plaintiff.
A study of the early English Common Law, together with the general American rule, reveals that an essential element of trespass is absent. While some courts have confused the words "voluntary" with "intentional," there is no question that a trespass is an intentional tort; but, this does not mean that an involuntary trespass is actionable. In the 1625 case of Smith v. Stone, 82 E.R. 533 (K.B.1625), Smith charged Stone with trespass and Stone defended by claiming that hewas carried *397 upon Smith's land by force and violence of others and was not there voluntarily. Justice Roll of the King's Bench stated:
"[I]t is the trespasse of the party that carryed the defendant upon the land and not the trespasse of the defendant; as he that drives my cattle into another man's land is the trespassor against him and not I who am the owner of the cattle."
This theory of law has been adopted in American jurisprudence:
"Trespass is an intentional harm; that is, where there is no intentional act, in the sense of an act voluntarily done, there is no trespass . . . ." 75 Am.Jur.2d, Trespass, § 6. See also, Restatement of the Law of Torts, Vol. I, § 158, Comment(e).
Thus, we see the distinction between "voluntary" and "intentional." If a person voluntarily travels on the land of another without knowledge that the land belongs to another, it is still a trespass. The element of intent is present. In Gosdin v. Williams, 151 Ala. 592, 44 So. 611 (1907), this Court held that it was immaterial that a defendant did not know his boundary lines and did not know that he was on the plaintiff's land. This case, however, did not eliminate the element of voluntariness. There was no issue as to whether the defendant had voluntarily entered the land of the plaintiff. The question of intent is whether one intended to be on the property in questionnot whether the person intended to trespass.[1]
No one could argue that Ms. Largay voluntarily entered onto the land owned by the City of Mobile. The trespasser was the individual who forced her onto this propertythe unknown assailant. Therefore, I would hold that the plaintiff was not a trespasser.
Given this legal conclusion, what, then, if any, legal duty did the City owe? It is important to note at the outset that the plaintiff is not relying on a common law theory of recovery based upon the varying duties owed by landowners to invitees, licensees, and trespassers. Instead, she states that her remedy is based upon statutory lawTit. 37, § 502, Code. This section states in pertinent part:
"No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation. . . unless the said injury or wrong was done or suffered through the neglect, carelessness, or failure to remedy some defect in the streets, alleys, public ways, or buildings . . . ." (Emphasis added.)
It is the position of Ms. Largay that this Code section creates a statutorily imposed duty for municipalities to the general public for the maintenance and upkeep of buildings, regardless of their status. I reject this contention because, taken to its logical conclusion, such in interpretation of the statute would create a higher duty on the part of a municipality than on landowners generally. Although I find no case law concerning the application of this section to the maintenance of buildings, I think the words of the statute clearly convey the intent of the legislature (even under preJackson standards) to establish a duty upon municipalities with respect to the maintenance of its buildings consistent with, and identical to, that of landowners generally.
In other words, § 502 did not impose upon the City a higher duty than that recognized as creating liability under the common law. That one may be a trespasser upon city-owned property (e. g., burglary of a secured warehouse), there can be no question. I cannot accept the proposition that, by virtue of § 502, the City's liability to such a trespasser is measured by the higher standard of due care as distinguishable from the mere duty not to intentionally or wantonly injure, which the common law places upon landowners generally.
Notwithstanding the rejection of this contention, however, in my opinion, the undisputed *398 facts of this case bring Ms. Largay within the class of persons the statute was intended to protect. And this for the reason, as noted earlier, that, absent the element of voluntariness, she never acquired the status of trespasser. If, indeed, it was the City's negligencethe violation of § 502which allowed the assailant to force her onto the City's property, not only must her status as trespasser fail, but it necessarily follows that she comes within the ambit of the statutorily imposed duty upon the City not to injure her, or contribute to her injury, as a proximate consequence of its negligent maintenance of its building. This duty of due care, though statutorily imposed, is no different from that imposed by the common law upon landowners generally.
Thus, under the facts of this case and under appropriate instructions, I believe the jury was authorized to find that the statute had been violatedconstituting a finding of negligence as a matter of lawand fix liability against the City for injuries proximately resulting therefrom.

III. Proximate Cause

This brings us to the third and final issue: Was the question of proximate cause properly submitted to the jury, or should the trial Court have ruled, as a matter of law, that the criminal assault by the unknown assailant constituted an independent intervening or efficient superseding cause, relieving the City of liability?
In considering this issue of causation, and its interplay with intervening cause, it is important to examine our prior case law. In Liberty National Life Insurance Co. v. Weldon, 267 Ala. 171, 100 So.2d 696 (1958), the question was whether an insurance companywhich issued a life insurance policy naming a third party, who had no insurable interest in the life of the insured, as a beneficiarywas negligent, and thus liable for wrongful death, when the third party murdered the insured. The claim against the life insurance company proceeded on the theory that the insurance company knew, or should have known, that the third party had no insurable interest, and that the negligent issuance of the policy proximately caused the death of the insured. The defendants contended, "the separate, independent, superseding, willful, malicious, crime of murder became `the responsible cause' of the death of Shirley Dianne Weldon."
The Weldon Court quoted with approval The Restatement of the Law of Torts, § 448:
"The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime." (Emphasis added.)
Mr. Justice Lawson, speaking for the Court, continued:
"We cannot agree with the defendants in their assertion that we should hold as a matter of law that the murder of the young girl was not reasonably foreseeable The question of proximate cause was properly left for the jury's determination . . . ." (Emphasis added.)
Although I agree with the City's contention that a distinguishing feature in Weldon is that it deals with a definitive public policythe preservation of life by prohibiting the naming of uninsurable interests as beneficiaries of life insurance policiesthe principle of foreseeability may nonetheless be applicable if the facts and circumstances bring this case within the ambit of the foreseeability rule. Generally, the question of proximate cause is one of fact for the jury's determination; but the legal perimeter for the operation of the foreseeability standard, as we shall discuss later, must be defined in terms of reasonableness and fairness. Thus, the holding in Weldon is not necessarily dispositive of the instant case.
*399 This Court again addressed the issue of intervening cause in Alabama Power Co. v. Guy, 281 Ala. 583, 206 So.2d 594 (1967). There, two automobiles were involved in an accident, one of which collided with a utility pole. The collision resulted in one of the electric wires falling from the supporting pole to the ground at a point 150 feet from the collision. The plaintiff came in contact with this uninsulated wire and was severely burned.
The Power Company argued that "the intervening independent act of a third person, not to be anticipated by appellant, created the condition of danger, and must be held to be the proximate cause of the injury. . . ."
The Court rejected this contention, quoting Sullivan v. Alabama Power Company, 246 Ala. 262, 20 So.2d 224 (1945):
"`It is not necessary that the defendant should anticipate the injury in the precise form as resulted. Nor need the particular consequences have been within the contemplation of the parties. . . .'"
The Guy Court further stated:
"`As regards proximate cause the courts look more for the possibility of a hazard of some form to some person than for the expectation of the particular chance that happened. . .' 38 Am.Jur., § 62, p. 715."
The Court concluded by stating that the issue of proximate cause was properly submitted to the jury.
In Havard v. Palmer & Baker Engineers, 293 Ala. 301, 302 So.2d 228 (1974), this Court again faced the issue whether an intervening cause was sufficient, i. e., of such an independent nature to relieve the defendant of liability. There, a ten-car collision in the Bankhead Tunnel caused gasoline fires to erupt, including one at the front and one at the rear of the Havard car. The plaintiff contended that the negligent maintenance of fire fighting equipment located in the tunnel was the proximate cause of the death of her husband.
As to the issue of intervening negligence, Mr. Justice Faulkner, speaking for the majority, stated:
"The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if care is not exercised. . . .
"In the end proximate cause is a question for the jury . . . The alleged intervening cause of the injury, viz., the truck running into the rear of decedent's car, is not of itself sufficient to relieve Palmer & Baker of liability since it is their original negligent act which is alleged as being the proximate cause of the decedent's death."
We find that the common thread which runs through these cases is that the question of proximate cause was determined to be a question of fact.[2] The City agrees that these cases commit this Court to a somewhat liberal view in submitting the issue of causation to the jury. It contends, however, that an affirmance here would require an unwarranted extension of the holdings of our prior decision; that the intervening criminal act, under the circumstances of this case, was the sole proximate cause of the plaintiff's injuries; and that we should so rule as a matter of law.
While the facts in each of the three cases reviewed differ one from the other, and while the intervening criminal act in Weldon received special public policy consideration, I do not believe the trial Court's submission to the jury of the issues of duty, breach of duty, and causation constitute such an unwarranted extension.
In addition to our own case law, it may be helpful to review cases involving this subject from other jurisdictions. The subject of "attack by another," as bearing on duty and liability of the original tortfeasor, *400 has received considerable attention by courts throughout the country; and these cases are collected in a rather lengthy Comment in 10 A.L.R.3d 619. At page 624 it is observed:
"Foreseeability is a factor which has been discussed at great length by several cases, although it is a matter of dispute whether this concept is properly considered in the realm of duty, proximate cause, or negligence."
The editor then notes: "[I]n at least one case, it was recognized that whether foreseeability is regarded as the measure of a duty or as a test of proximate causation, the result would not be affected. Firman v. Sacia (1959), 7 App.Div.2d 579, 184 N.Y.S.2d 945." Footnote 17.
Any attempt to draw distinctions and comparisons among the reported cases for the formulation of rules to serve as the basis for future decisions is not only futile, but seeks an overly simplistic answer to a very complex problem. The A.L.R. annotation at p. 624 continues, "These concepts are simply too abstract to permit concrete analysis on a factual basis."
There is perhaps, however, more consistency in the holdings of these "attack by another" cases, though based on factors less frequently discussed, then in their rationale. Though more subtle than readily apparent, these factorsimportant in determining the existence of the elements of duty and causationrange from the defendant's ability or inability to comply with the proposed duty, and the vagueness of the obligations sought to be imposed, to the ability or inability of the victim of the attack to protect himself, and the nature of the risk created by defendant's conduct. Such factors find their articulationwhether holding the intervening act constitutes an efficient superseding cause or holding the chain of causation is not broken therebyin terms of "foreseeability."
Aside from conceptual considerationswhether a factor in determining duty or proximate causeforeseeability stands at the core of the problem; and it has been said that "in every case the basic question is one of policy." Feezor and Favour, Intervening Crime and Liability for Negligence, 24 Minn.L.Rev. 635, 642 (1939).
The A.L.R. annotation, at p. 643, after analyzing the factors affecting decisions, concludes:
". . . and it would seem that the factors of foreseeability, cause, etc., are really elements which merely aid the courts in determining whether a given decision is fair and reasonable. Thus, it might be said that all of the decisions are really based on fairness and reasonableness, despite the fact that only a few cases have expressly discussed such considerations as a factor in reaching their conclusions."
Foreseeability, then, must be viewed not in its most general sense, for surely it is not every foreseeable risk of harm to another that must in all events be guarded against. We all foresee the commission of crime almost everywhere and under many varying circumstances. Is foreseeability in this broadest sense to impose on each of us a duty, and thus liability, for a failure to prevent injuries to the victims of crimes?[3] No, this is impalatable.
The inquiry must necessarily be more narrowly focused; and the permissible perimeter of the legal scope of operation of the foreseeability principle must be restricted to those events produced by the original negligent conduct which can be reasonably anticipated or foreseen.
Unless so restricted, the traditional tort concept of exempting from liability those injuries which do not flow naturally and proximately from the negligent act would be defeated. Stated conversely, only where the negligent conduct has bound up in it such perils or risks of harm, which, in the natural order of things, are eventuated through the reasonably anticipated conduct *401 of another, and injury results therefrom, can it be said that the original misconduct was the proximate cause. The potency to do harm, contained in the original act, must continue throughout the chain of events and come to fruition in the ultimate injury; and the inquiry whether this chain is broken when the ultimate injury is precipitated by the intervening act of another as to constitute an independent intervening or efficient superseding cause is to be answered through resort to the standards of "reasonable foreseeability."
But by what test do we judge "reasonable foreseeability?" Under any given circumstances, what events are to be classified "reasonably foreseeable?" Is it reasonable to anticipate that the rape of a young girl will be precipitated through the criminal conduct of another, though acting upon the City's original negligent maintenance of its building? Obviously, there is no simple answer to these complex questions. But the inquiry must begin by a weighing of the relationship of the parties, the nature and extent of the risk, and the public interest to be served by the proposed solution; and these broader considerations are aided by a further consideration of such factors as the defendant's ability or inability to comply with a proposed duty, ability or inability of the victim to protect himself, and the vagueness or clarity of the obligation sought to be imposed.
I now turn to a consideration of these factors as they relate to the instant case.
1. Relationships of the Parties. Admittedly, here, the plaintiff and defendant do not occupy the relationship, one to the other, of landlord and tenant, employer and employee, or commercial proprietor and patron. What is significant, however, as we have previously observed under the "Duty" section of this dissenting opinion, the injured plaintiff's involuntary entry upon the City's premises was allegedly through the City's violation of its statutory duty of due care in the maintenance of its building. Thus, Ms. Largay, whose involuntary presence on the City's property is itself grounded on the City's misconduct occupies the legal status not unlike others whose relationship entitles them to due care on behalf of the City in the maintenance of its building.
As owner of the building, the City's duty, statutorily imposed, to properly maintain the building is neither vague nor beyond its reasonable ability to perform. Conversely, the plaintiff's ability to protect herself against the assailant is magnified by the availability to the assailant of the unoccupied and open building, as negligently maintained by the City.
It is significant to note that it is not a breach of general duty of the City to protect its citizens (e. g., failure to furnish adequate police protection) that is the basis of the plaintiff's claim.[4] Rather, it is the specific, more narrowly defined duty (here, statutorily imposed) of the City to maintain its building with due care, the breach of which is alleged as a proximate cause of her injuries. (Additionally, the trial Court restricted the provable elements of damages to those injuries which she suffered upon and subsequent to her forcible entry into the building.)
2. The Nature and Extent of the Risk. Initially, two aspects of the nature or character of the risk of harm to another, in its relationship to the precipitating cause of injury, must be clarified.
First, whether an intervening act is criminal, while worthy of consideration by the trier of facts in determining "reasonably foreseeable," does not of itself constitute, as a matter of law, an efficient superseding cause as to defeat actionable negligence. The above quote from Weldon makes this point. See also McLeod v. Grant County School Dist., 42 Wash.2d 316, 255 P.2d 360 (1953).
*402 2nd Restatement, Torts, § 449, states the rule:
"If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby."
Comment a states that this section should be read in conjunction with § 302 B of the 2nd Restatement, Torts, which reads:
"An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal."
Second, it is an unjustifiable restriction of the issue to focus attention upon the specific type of incident which here occurredforcible rape. Rather than whether the actual harm is of a particular kind which was expectable, the question is whether such harm fell within the general field of danger which reasonably should have been anticipated. It is this point that is the central thrust of Alabama Power Co. v. Guy, supra.
This thought is succinctly stated by Professors Harper and James:
"Foreseeability does not mean that the precise hazard or the exact consequences which were encountered should have been foreseen." Harper and James, Law of Torts, § 20.5, p. 1147.
2nd Restatement, Torts, § 435(1), capsules the rule of law thusly:
"If the actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred does not prevent him from being liable."
The nature of the risk here involved, in light of the two foregoing principles, must be reviewed in the factual context of the negligently maintained premises and its relationship to the act of the assailant and the rape precipitated thereby. The act occurred at 3:30 on Friday afternoon in the downtown section of the City. Ms. Largay had parked her car in a lawful parking space on the public street directly opposite, and only a few feet from, the broken basement dooraccessible from the sidewalk that ran immediately adjacent to the buildingthrough which the rapist later forced her into the building. When the assailant's effort to start the plaintiff's car failed, he resorted to the only readily available refuge or coverthe abandoned city buildingfor the commission of his dastardly deed.
The City's prior knowledge that the doors had been broken into and left open; that the building was located in a high crime area' that multiple arrests for criminal offenses had been made in the area; and that there had occurred within the area several "car break-ins and thefts" were all inferences from which the jury could conclude that the City should have reasonably anticipated that its negligent maintenance of this building would likely contribute to the general field of danger actually encountered by the plaintiff, though her ultimate injury was precipitated through the agency of an intervening third party.
3. The Public Interest in the Proposed Solution. I think the public interest served by permitting the issue of proximate cause to be submitted for the jury's determination under the circumstances of this case is self evident. The determination of the City's violation vel non of its statutory duty to use due care in the maintenance of its building is a proper function of the jury as representing current moral and societal values of the community.
The Sullivan Court, though antedating the injection in our cases of the term "reasonably foreseeable," stated the rule:
"[A] person guilty of negligence should be held responsible for all the consequences which a prudent and experienced man, fully acquainted with all the circumstances which in fact existed, whether *403 they could have been ascertained by reasonable diligence or not, would at the time of the negligent act, have thought reasonably possible to follow, if they had occurred to his mind." Sullivan v. Alabama Power Co., 246 Ala. 262, 20 So.2d 224 (1945).
Comment a to 2nd Restatement, Torts, § 453, observes:
"[I]f the negligent character of the third person's intervening act or the reasonable foreseeability of its being done (see § 447 and 338)[5] is a factor in determining whether the intervening act relieves the actor from liability for his antecedent negligence, and under the undisputed facts there is room for reasonable difference of opinion as to whether such act was negligent or foreseeable, the question should be left to the jury."
The Guy Court stated:
"Unless the evidence is entirely free from doubt or adverse inference, the question is one for the jury; and whether or not plaintiff's injury is the proximate result of defendant's negligence is ordinarily a question for the jury."
Mr. Justice Bloodworth, speaking for four justices (three dissenting and one concurring) in City of Mobile v. Havard, 289 Ala. 532, 268 So.2d 805 (1972),[6] articulated the Alabama rule as follows:
"As the majority opinion suggests, our rule is that when the facts presented are such that reasonable men must draw the same conclusion, the question of proximate cause is one of law for the court to determine. Giles v. Gardner, 287 Ala. 166, 169, 249 So.2d 824 (1971). I cannot agree that reasonable men must draw the same conclusion from the facts as to proximate cause here. It is apparent the trial judge reached the same conclusion as I espouse. The dissenting justices are each of the opinion the issue was for the jury."

IV. Conclusion

I emphasize, by way of conclusion, that our prerogatives as an appellate court include neither fact-finding nor review of conclusions of fact implicit in the jury verdict. Rather, our scope of review is a narrow one. Though we were to disagree with the jury's findings of negligence and proximate cause, we must nonetheless affirm the instant appeal unless the trial Court erred in submitting these issues to the jury.
In order to reverse the trial Court for not ruling, as a matter of law, that the criminal act constituted an independent intervening cause, we must hold, then, that reasonable minds, drawing upon all reasonable inferences from the evidence, could reach but a single conclusion: that, given the City's negligent maintenance of the building, the negligent act did not flow in a natural, unbroken chain, reasonably foreseen, to constitute a contributing cause to the ultimate injury.
My careful consideration of each of the factors traditionally employed in such cases by the common law courts throughout this country, as well as our own case law, constrains me to reject such a holding. Indeed, I believe one reasonable inference which the jury was free to draw from the evidence is that, but for the City's negligence, Ms. Largay's ultimate injury, under the circumstances could not have been eventuated for lack of available and appropriate means for the perpetration of the criminal assault. Undoubtedly, the jury so concluded; and the trial Court upheld its conclusion by denying the City's motion for a new trial.
Therefore, I would hold that the trial Court ruled correctly in submitting to the jury, under appropriate instructions, the issues of municipal immunity, duty, breach of duty, and proximate cause.
NOTES
[1] For an Alabama case predicating its holding of trespass on the alleged trespasser's voluntary act of being upon the premises, see Scoggins v. Atlantic & G. P. Cement Co., 179 Ala. 213, 60 So. 175 (1912).
[2] For other Alabama cases dealing with the general subject of intervening cause, each of which held that the issue of proximate cause was properly submitted or due to be submitted to the jury, see F. W. Woolworth v. Kirby, 293 Ala. 248, 302 So.2d 67 (1974), and Lawson v. General Tel. Co. of Alabama, 289 Ala. 283, 267 So.2d 132 (1972).
[3] This is not to say that reparation to victims of crime is beyond the legislative policymaking prerogative. Indeed, the National Conference of Commissioners on Uniform State Laws has adopted a proposed statute, "Uniform Crime Victims Reparations Act" (1973).
[4] For a case holding lack of proximate cause as a matter of law on the ground of vagueness of duty, where the plaintiff claimed breach of duty to furnish police protection against a landowner, see Goldberg v. Housing Authority of Newark, 38 N.J. 578, 186 A.2d 291, 10 A.L.R.3d 595 (1962).
[5] The reference to § 448 is to make clear that the term "negligence" is intended to also include a criminal act.
[6] This first Havard case was reversed on second appeal and, as previously noted, the majority opinion in second Havard was authored by Mr. Justice Faulkner, following substantially the original dissent of Mr. Justice Bloodworth quoted from above.